PILGRIM et al. v. BECK et al.

(Circuit Court, D. Nebraska. October 8, 1895.)

INDIAN LANDS—ALLOTMENTS IN SEVERALTY—LEASES.

Leases made by the Indians of lands in the Winnebago Indian reservation, allotted to them in severalty under the acts of congress providing therefor, are absolutely void; and neither such leases, nor occupancy and planting of crops upon the lands by the lessees or their subtenants, give to the occupants any right to restrain the officers of the government from removing them from such lands. Beck v. Real-Estate Co., 12 C. C. A. 497, 65 Fed. 30, followed.

This was a suit by Robert Pilgrim and others against William H. Beck, United States Indian agent at the Winnebago Indian reservation, and others, to restrain him from removing complainants from certain lands. Defendants demurred to the bill.

Daley & Jay and H. C. Brome, for complainants.

A. J. Sawyer, U. S. Dist. Atty., and R. W. Breckenridge, for defendants.

SHIRAS, District Judge. This case was begun in the district court of Thurston county, Neb.,—the petition being filed therein on the 17th day of July, 1895,—and was thence removed into this court upon the petition of the defendants. On behalf of complainants, it is averred that they are residing upon certain lands, which have heretofore been assigned in severalty to sundry members of the Winnebago tribe of Indians; that after allotment had been made the Indian allottees entered into a contract with the Flournoy Live-Stock & Real-Estate Company for the lease of these lands for the period of five years; that said company was a corporation organized under the laws of the state of Nebraska, for the purpose of bringing under cultivation as many as possible of the reservation lands that were tributary to the village of Pender and Emerson; that, in pursuance of the policy of the company, it was made known to the Indians that the company were willing to lease lands along the western part of the Winnebago reservation, with the intention of having the same improved and made more productive and valuable, and put in such condition that the Indian owner might obtain a large annual rental therefrom, and, whether successful in this intention or not, they would pay the Indian owner some small annual rental for his land, which rental would be increased in case the company was successful in re-leasing the lands for agricultural purposes; that the company has obtained leases of lands, from the Indian owners, extending over a distance north and south of 10 miles, and east and west of 15 miles; that the company has secured, as sublessees, a large number of thrifty tenants, who have broken up a large part of their holdings, so that in the year 1895 there are under cultivation about 25,000 acres, covered with luxuriant crops.

The bill, after setting out the names of the individuals in occupancy of the lands as tenants, and the descriptions of the particular parcels occupied by each named tenant, and that many of them are

residing on these lands in houses of their own construction, with barns, yards, and other improvements, then avers that William H. Beck is the duly-appointed acting Indian agent at the Winnebago reservation, having charge of the United States property thereon, and the management of the business transactions between the United States and the Winnebago Indians; that said Beck has great influence over and with many of said Indians; that said Beck has appointed others of the named defendants. members of the Indian police, and, through their agency, has already removed some of the tenants from said leased lands, and threatens to remove others; that thereby plaintiffs are put in fear of their lives, and are harassed, annoyed, and delayed in harvesting their crops, the right so to do being claimed under the leases aforesaid, the validity of which is denied by said Agent Beck. The prayer of the bill is to the effect that a temporary injunction be at once granted, to be made perpetual at the hearing, restraining said Beck, and all parties acting under him, from in any manner interfering with the plaintiffs in regard to these lands, or the crops growing thereon; to restrain the defendants from making, or pretending to make, any contracts respecting the occupation and use of said real estate, and from leasing, or exercising any jurisdiction in reference thereto, or from giving any directions to the Indian police in regard to said lands or the crops thereon, or the persons claiming possession thereof. The demurrer presents the question whether, upon the facts recited in the bill, the complainants are entitled to any relief whatever.

The right and equity of complainants are based upon the allegations that the lands in question, being part of the Winnebago reservation, were allotted in severalty to individual Indians, under the acts of congress making provision therefor; that the Indian allottees were induced to lease the lands to the Flournoy Company, who in turn have sublet the same to complainants; that the complainants have put the lands into cultivation, have growing crops thereon, and are entitled to continue in occupancy of the lands until the expiration of their leases, with the right to harvest their crops.

In the case of U. S. v. Real-Estate Co. (pending in this court, and just decided) 69 Fed. 886, it is adjudged, following the ruling of the circuit court of appeals for this circuit in the case of Beck v. Real-Estate Co., 12 C. C. A. 497, 65 Fed. 30, that the leases executed by the Indian allottees of lands in severalty in the Omaha and Winnebago reservations are absolutely void, and therefore convey no title, right, or interest to the lessees named therein. It, of necessity, follows that the complainants herein have wholly failed to show any legal right to the occupancy of the lands described in the bill, and their claim based upon alleged or supposed equities is equally without solid foundation. An examination of the treaty made with these Indians, whereby the United States set apart this reservation for the use, occupancy, and benefit of the Indians, and of the acts of congress providing for the settling of the Indians upon lands allotted in severalty, clearly shows that the object and purpose of the government, operating through the interior department, was and is to train the Indians in habits of industry; to teach them

how to cultivate the soil; and thus gradually prepare them for complete personal independence. The performance of this work is primarily committed to the interior department, which in turn operates through the commissioner of Indian affairs and the Indian agents appointed for the different tribes. The primary duty imposed upon the department is to develop the Indian in civilization; to make him self-supporting, and fit him for ultimate absorption into the mass of our people; and it is to this end that the lands of the reservation are placed under control of the interior department. In the bill filed herein it is averred that the Flournoy Company is a corporation organized for the purpose of bringing under cultivation as many as possible of the reservation lands that are tributary to the villages of Pender and Emerson. The mode by which this was to be accomplished was by inducing the Indians to lease their lands to the company, which in turn would place in occupancy thereof persons not members of the tribe. In other words, it is the avowed purpose of this company to lease the lands, so as to place thereon white men, instead of the Indians, thus practically nullifying the main object of allotting lands in severalty to the Indians. If the Flournoy Company should be permitted to carry out the object and purpose for which it was created, according to the averments of the bill, it would result that in a short time all the valuable lands in the reservation would be in the occupancy of white men, and the Indians, instead of being trained in habits of industry, and taught to earn their living by cultivating the soil, would either be reduced to mendicancy, or, if the company should perform its promise to secure the payment of fair rentals to the Indian allottees, would be living on their rentals, in a state of idleness. It would seem, from the averments of the bill, that the complainants entertain the view that the purpose of the government in providing for the allotment in severalty of the reservation lands was to secure the rapid development of the lands; and hence it is averred in the bill that the Indians were without the necessary teams and farming implements for breaking and tilling the land and securing the fullest value therefrom, and therefore the company was organized, not to supply the Indians with the lacking teams and implements, and thus to enable them to cultivate the land, but to supplant the Indian in the occupancy of the lands, in order that they might be made productive. In brief, the purpose of the company was to secure the rapid development of the lands, by placing thereon tenants already civilized and accustomed to cultivating the soil,—such development being for the benefit of the tenants, the company, and the towns of Pender and Emerson,—whereas the purpose of the government was to carry out its treaty stipulations with the Indians, and, further, to develop the Indians in civilization; to educate them into habits of industry; and, by teaching them to properly cultivate the soil and draw their living therefrom, to give the lands allotted in severalty such a practical value in their eyes that ultimately they might be safely invested with the right to dispose of their holdings. The purpose of the Flournoy Company was and is to develop the lands, regardless of the effect upon the Indians.

The purpose of the government is to develop the Indians, and to use the lands for that end. In effect, the theory of the bill is that the Flournoy Company and its sublessees are entitled to the aid of a court of equity for their protection, as against the efforts of the government to carry out its duty to these Indians.

If this bill should be maintained, and the relief therein prayed for should be granted, the practical result would be that the Flournoy Company would be placed in charge of the reservation in question, and the United States would be ousted from all control over the same. When the leases of the allotted lands were taken, the Flournoy Company, and all others following its example, knew that, under the express provisions of the acts of congress providing for the allotments in severalty, an absolute restriction against alienation by the allottees was enacted, and all power to contract about the same was denied, until the lapse of the 25 years of occupancy provided for in the statutes. These parties knew, therefore, that the leases obtained from the Indians were wholly void, and absolutely worthless. When the present bill was filed the decision of the court of appeals in the case brought by William H. Beck et al. against the Flournoy Live-Stock & Real-Estate Company had been rendered, in which it was held that these leases were void; the opinion in that case having been filed December 10, 1894. Under these circumstances, it must be held that when this bill was filed the complainants knew that the leases under which they held had been taken, not only without authority of law, but in absolute defiance of the express provisions of the acts of congress; that the invalidity thereof had been judicially adjudged by a court of competent jurisdiction; that the continued occupancy of the lands by the tenants was without warrant of law, and was in direct conflict with the control over these lands vested in the interior department of the government. This being true, it follows that no equity is created in complainants by the fact that they have cultivated these lands during the season of 1895 which justifies the court in sustaining the present bill for their benefit. It may be true that many of the subtenants have been in fact misled by the representations made by the Flournoy Company, or its officers, in regard to their rights, and that they have relied thereon, but such representations are not chargeable against the United States. The bill not only wholly fails to show any legal right to the occupancy of these lands on part of the complainants, but in fact affirmatively shows that this occupancy, and the leases upon which it is based, are held in violation of the laws of the United States, and in open defiance of the authority of the United States over a subject-matter within the paramount control of the national government; and there is no ground upon which the court can give any consideration to the fact that the complainants have planted and cultivated the crops now growing on these lands. The management and control of these lands for the benefit of the Indians is in the hands of the department of the interior, and it is for the officials of that department to give weight to any equities or considerations of hardship that may exist in favor of any of the complainants

herein.    The Indian agent, acting under the instructions of the department, is charged with the duty of protecting the interests of the Indians, and it is not for the court to interfere with his action on the ground of hardship to the complainants.    The demurrer is therefore sustained, and the bill is dismissed, as being without law or equity to support it, at cost of complainants.