UNITED STATES v. FLOURNOY LIVE–STOCK & REAL–ESTATE CO. et al.

(Circuit Court, D. Nebraska. January 7, 1896.)

1. INDIAN LANDS—ALLOTMENTS IN SEVERALTY—EFFECT OF CITIZENSHIP.
    The fact that Indians, to whom lands have been allotted in severalty, are declared to be citizens of the United States, does not render null and void as to them, or as to the remaining portions of their tribes, restrictions upon alienation of their lands contained in the acts of congress under which allotments in severalty have been made, nor terminate the right and duty of the United States to preserve the reservation lands for the use and benefit of the Indians. Beck v. Real-Estate Co., 12 C. C. A.

497, 65 Fed. 30; U. S. v. Real-Estate Co., 69 Fed. 886; and Pilgrim v. Beck, Id. 895,—followed.

2. SAME—RELATIONS TO GOVERNMENT.
Lapse of time and allotment of portions of their reservations in severalty do not terminate the tribal relations of Indians, nor remove them from the supervision and control of the interior department of the government.

3. SAME—UNAUTHORIZED LEASE—POWER OF COURT.
The government has the right to invoke the aid of the court to remove from the lands of Indians under its supervision and control persons who have intruded thereon under unauthorized leases from the Indians, and to restrain such persons from procuring other such leases from the Indians.

4. FEDERAL COURTS—JURISDICTION—SUITS BY THE UNITED STATES.
The federal courts have jurisdiction of suits by the United States without regard to the amount in controversy.

This was a suit by the United States against the Flournoy Live-Stock & Real-Estate Company and others to require the removal of the defendants from certain lands claimed under leases from certain Omaha and Winnebago Indians, and to restrain the defendants from procuring other such leases. A demurrer to the bill was overruled. 69 Fed. 886. The defendants answered, and the cause was now heard on bill and answer.

A. J. Sawyer, U. S. Dist. Atty., and R. W. Breckenridge, for the United States.

Brome, Burnett & Jones, for defendants.

SHIRAS, District Judge. This case has already been before the court upon a demurrer to the bill, and reference may be made to the opinion then given for a statement of the questions involved and the facts out of which they arise. See 69 Fed. 886. After the overruling of the demurrer, the Flournoy Live-Stock & Real-Estate Company and the other defendants filed answers to the bill, and thereupon the case was by the complainant set down for hearing upon the bill and answer, and in this form, after argument by counsel, has been submitted to the court. The answers, which are the same in substance, in effect admit the making of the treaties with the Omaha and Winnebago tribes of Indians; the enactment of the several acts of congress recited in the bill; the allotment of portions of the reservation lands to the members of the named tribes in severalty; the leasing thereof by the Flournoy Live-Stock & Real-Estate Company and by the other defendants, and the occupation of these leased lands by the defendants; but aver that all restrictions contained in the treaties or acts of congress upon the absolute right of alienation by the allottees are now obsolete, null, and void. As the case has been set down for hearing upon the bill and the answers filed thereto, the defendants are entitled to the benefit of all matters properly pleaded in the answer, and the questions at issue are therefore those presented by the averments of the bill, not denied in the answers, read in connection with any facts properly pleaded in the answers. Banks v. Manchester, 128 U. S. 244–251, 9 Sup. Ct. 36.

Averments in an answer of legal conclusions from admitted facts, or touching matters of which the court takes judicial knowledge,

are not held to be facts properly pleaded, in such sense as to preclude the court from drawing the proper conclusions of law, or from relying upon its judicial knowledge of such matters as the court is bound to take notice of, and which may be pertinent to the questions at issue. U. S. v. Ames, 99 U. S. 35–45; Dillon v. Barnard, 21 Wall. 430; Jones v. U. S., 137 U. S. 202–214, 11 Sup. Ct. 80; Wilson v. Gaines, 103 U. S. 417; Railroad Co. v. Palmes, 109 U. S. 244–253, 3 Sup. Ct. 193. The courts of the United States take judicial notice not only of the public acts of congress and of the legislatures of the several states of the Union, but also of the rules and regulations prescribed by the several departments for the transaction of the public business (Caha v. U. S., 152 U. S. 211, 14 Sup. Ct. 513); also of the territorial extent of the jurisdiction exercised by the government whose laws they execute; also of the acts of the executive branch of the government, in the enforcement of the treaties or public laws of the country (Jones v. U. S., 137 U. S. 202–214, 11 Sup. Ct. 80); also of all matters of general history or of public notoriety; also of the official character of persons appointed by the president or heads of the departments or of the bureaus therein for the performance of duties created by acts of congress (Brown v. Piper, 91 U. S. 37; Keyser v. Hitz, 133 U. S. 138–145, 10 Sup. Ct. 290).

The first question argued by counsel is that of the jurisdiction of the court, based upon the fact that the bill avers that the amount in controversy exceeds $2,000, which is denied in the answers. If, under the statutes now in force, the restriction as to amount applied to cases wherein the United States is plaintiff or complainant, the contention would have force; but it does not, and therefore it is immaterial whether the amount in controversy exceeds $2,000 or not, because this court has jurisdiction of all cases brought by the United States, regardless of the amount involved. The answers admit the creation of the Omaha and Winnebago reservations in Nebraska under the treaties entered into with the United States before Nebraska became a state; admit the enactment of the acts of congress recited in the bill; but aver that by reason of the fact that the Indian allottees are declared to be citizens of the United States, all the restrictions upon the right of alienation contained in the acts of congress under which the allotments in severalty were made are wholly void, and that all the control exercised by the United States government over these reservations is without authority, and that the Indians, holding the lands in severalty, have full right to alienate the same; that the leases under which the defendants claim title are valid, and that the defendants have the lawful right to occupy these lands for their own benefit; and the answers deny that the laws and the authority of the United States are paramount and supreme over the reservations in question. Thus it appears that the questions which are decisive of the case now before the court are questions of law, the pivotal point being whether conferring citizenship upon the Indian allottees freed the lands allotted to them from the restrictions contained in the acts of congress upon the right of alienation, and terminated all right of control on part of the United

States over the reservations, the lands therein, and the Indians occupying the same.     Nothing has been adduced by way of argument or authority which leads me to conclude that the views expressed in the opinion rendered upon the demurrer to the bill in this case and in the case of Pilgrim v. Beck, 69 Fed. 895, are erroneous, and I shall not attempt to enlarge the argument therein contained, or to repeat the substance thereof at the present time.     Relying upon these opinions and that of the circuit court of appeals for this circuit in the case of Beck v. Real-Estate Co., 12 C. C. A. 497, 65 Fed. 30, I hold that the fact that the Indian allottees are declared to be citizens of the United States does not render null and void as to them, or as to the remaining portion of the Omaha and Winnebago tribes, the restrictions upon the right of alienation contained in the several acts of congress under which allotments in severalty have been made of portions of these reservations; and it therefore follows, and must be so held, that the several leases under which the defendants claim title and right of possession are wholly void.

I further hold that these reservations continue to be Indian reservations; that the United States has never yet been released from the treaty stipulations and obligations by which it assumed to preserve these lands for the use and benefit of the Indians; that the United States holds the title of these lands charged with the trust created by the treaties in question, and it is its duty to do whatever is necessary to protect the Indians in the proper use and occupancy thereof; that the power and right in the United States to do whatever is necessary for the fulfillment of its treaty duties, trusts, and obligations towards the Indians rests upon every foot of soil and upon every individual within the boundaries of the reservations, and this power and right is paramount and supreme.

I further hold that the lapse of time and the allotment of portions of these reservations have not, as claimed by defendants, terminated the tribal relation of the Indians, nor have the Omahas and Winnebagos been taken from under the supervision and control of the interior department of the government, nor does it appear that by act of congress or by any act of the executive have these reservation lands been thrown open to the occupancy and ownership of the whites, nor can there be found any proper authority for leasing any portions thereof, excepting under the control of the interior department; and as it appears that the leases held by the defendants were not taken under the rules and regulations of the department, but in total disregard thereof, and as it further appears that the defendants hold possession, not under any right, license, or permission granted by the United States, but in defiance of the orders, rules, and regulations of the Indian office and of the interior department, I further hold that the United States has the right to invoke the aid of the court to remove the defendants from the possession of the lands in the bill described, and also to restrain them from procuring the execution of other leases from the Indian allottees, except in the mode provided in the acts of congress, and under the control and supervision of the department of the interior.     Decree accordingly.