### BAGGALEY v. PITTSBURG & LAKE SUPERIOR IRON CO. et al.

(Circuit Court of Appeals, Sixth Circuit.    December 12, 1898.)

#### No. 628.

1. CORPORATIONS—INTEREST IN LANDS—STANDING TIMBER.
  The sale of standing timber is a sale of an interest in lands within a statute prohibiting a mining corporation from selling land without a vote of its stockholders.

2. SAME—STATUTE RELATING TO MINING COMPANIES—CONSTRUCTION.
  The Michigan statute (How. Ann. St. § 4099) prohibiting mining corporations from alienating any part of their "mine works, real estate, or franchise," unless expressly authorized by the vote of three-fifths of the capital stock, "provided that the provisions of this section shall not apply to city or village lots, nor to land not required for mining purposes from which the timber has been removed, * * * which may be conveyed when authorized by a vote of a majority of the directors," was designed only to prevent such alienation of property as would disable the company from the conduct of its business as a mining company, and does not apply to a sale of nonmineral lands situated in another county, and at a distance from its mining property, nor to the sale of timber therefrom.

3. STATUTES—RULES OF CONSTRUCTION—PROVISOS.
  While the ordinary office of a proviso is to except that which would otherwise be included in the act, the rule that it should be so construed is not of universal obligation, as the proviso may be used from excessive caution to prevent a possible misinterpretation of the act by including therein that which was not intended, and a court is required to give effect to the general intent of the act if it can be discovered from the act itself.

Appeal from the Circuit Court of the United States for the Western District of Michigan.

This bill was filed by a stockholder to restrain his corporation, its officers and directors, from selling the company's lands, and also from selling or otherwise disposing of timber standing upon its lands, unless previously authorized thereto by a vote of three-fifths of the capital stock of said company.    The corporation sought to be enjoined is a mining company organized under the provisions of chapter 123, How. Ann. St. Mich.    The complainant below and appellant here owns or controls and represents more than two-fifths of the stock of the company.    The remainder of the stock is owned or represented by the defendants and appellees Joseph and John C. Kirkpatrick, one of whom is the general manager and treasurer of the corporation and the other his assistant.    The directors are five in number, three of whom were selected by the majority, or Kirkpatrick, interest, including both of themselves, and the other two were selected, under the cumulative voting system, by the appellant and his interest.    Until 1889 the company owned and operated iron mines in Marquette county, Mich., and also owned large bodies of wild land in Marquette, Delta, and Menominee counties.    In 1889 it made a sale of its iron mine, and since that time has conducted no sort of mining, smelting, or metal manufacturing business.    The sale of the mines included some thousands of acres of its lands in the county of Marquette.    The company continued, however, to be the owner of about 5,000 acres of land in Marquette

county and of about 18,000 acres of wild lands in Delta and Menominee counties. All of this land seems to have been acquired as mineral land, and that still held in Marquette county is yet classed as mineral land. The lands in Delta and Menominee counties do not seem to be such, and are not now regarded or classed as, mineral lands. The bill charged that the managers and directors, through the control and domination of the Kirkpatricks, as majority shareholders, were threatening to sell and dispose of the lands of the company, and were engaged regularly in selling the timber standing on said lands, particularly those within Delta and Menominee counties, and this without first obtaining the vote of three-fifths of the stockholders, and in violation of the power of the managers and directors of said company, and in violation of section 4099, How. Ann. St., which is in the following words: "No alienation, division, sale or mortgage of any, or any part of the mine works, real estate or franchise of any corporation mentioned in the first section of this act, shall have any force or effect, or pass any title thereto, or interest therein, unless expressly authorized by the vote of three-fifths of the capital stock of said company at some meeting of the stockholders called, and notified in accordance with the provisions of section nine of this act: provided, that the provisions of this section shall not apply to city or village lots, nor to land not required for mining purposes from which the timber has been removed, nor to rights of way and depot grounds for railroads, and rights of way for highways, which may be conveyed when authorized by a vote of a majority of the directors." Upon the pleadings and evidence the circuit court granted an injunction restraining the defendants or any of them from alienating "any lands of the company wherever situated," and from "selling, cutting, or removing any of the standing timber, except for actual use in the prosecution of the business of mining," from the lands in Marquette county, unless authorized thereto by a vote of three-fifths of the stock of said company. The court denied an injunction to restrain the selling of timber upon or from the lands in Delta and Menominee counties. The complainant, Ralph Baggaley, prayed and was allowed an appeal "from so much, and only so much, of the final decree" as denied an injunction restraining defendants from selling, cutting, or removing timber from the company's lands in Delta and Menominee counties.

A. C. Angell, for appellant.

Eugene E. Osborne, for appellees.

Before TAFT and LURTON, Circuit Judges, and CLARK, District Judge.

LURTON, Circuit Judge, after making the foregoing statement of facts, delivered the opinion of the court.

The sale of standing timber is a sale of an interest in land, and under the Michigan statute of frauds must be in writing. Johnson v. Moore, 28 Mich. 3; Russell v. Myers, 32 Mich. 522; Williams v. Flood, 63 Mich. 487, 30 N. W. 93. The contention, therefore, is that, if it was in excess of the authority of the officers and directors of this company to sell the lands of the company unless authorized thereto by a vote of three-fifths of the stock of the company, it was equally unauthorized to sell the timber standing thereon. But does the statute prohibit the sale of all lands or interests therein unless consented to by the requisite number of shareholders? or only such as are useful for mining purposes? To ascertain the purpose of this act we may look to the whole statute, including exceptions stated by way of a proviso or saving clause. The general purpose of the statute was to protect the interests of shareholders in mining companies. In Beecher v. Mill Co., 45 Mich. 103, 7 N. W. 695, Mr. Justice Cooley interprets the act by saying: "It intends that the mining property shall not be conveyed away or mortgaged ex-

·cept by their deliberate action." That the limitation is upon the alienation or incumbrance of "mining property," as distinguished from property not required in the conduct ·of the business for which the company was organized, is evident from the description of property to which the prohibition applies. The prohibition is against the alienation or incumbrance of "the mine works, real estate, or franchises." By "real estate" we must understand, from its association with "mine works" and "franchises," that species of "real estate" useful or valuable in connection with its "mine works" or "franchises." This interpretation is made more evident by the terms of the proviso, which expressly authorizes, by the vote of a majority of the directors, the sale of "city or village lots" and lands, "from which the timber has been removed," "not required for mining purposes."

We are not unmindful that the ordinary office of a proviso is to except ·out of an act that which would otherwise be included. But this rule must not be carried too far. Such clauses are often introduced from excessive caution and for the purpose of preventing a possible misinterpretation of the act by including therein that which was not intended. The rule is, therefore, not one of universal obligation, and must yield to the cardinal rule which requires a court to give effect to the general intent if that can be discovered within the four corners of the act. If such general intention would be defeated by construing the act as embracing everything of the same general description as those particularly excepted therefrom, an arbitrary application of the rule is not admissible. Tinkham v. Tapscott, 17 N. Y. 141. The purpose of this statute was to prevent such alienations or incumbrances of property as would disable the company from the conduct of its business as a mining company. To avoid all possible misinterpretations of this intent, the legislature, from an excess of caution, has seen fit to except out of the act a class of property which, by description, is not necessary or important to the integrity of the ·company's business. The lands of this company situated within Delta and Menominee counties are not mineral lands. They were probably bought in the belief that they contained minerals. No such minerals have been discovered. They are, therefore, lands not "required" for mining purposes. They are in counties quite distant from the county in which the company's remaining mineral land is located. The timber thereon is, therefore, of no possible value for mining uses or purposes. The sale of either timber or land not required or useful for mining purposes is not prohibited under any reasonable interpretation of this statute. The sale of either or both would in no degree cripple or disable the company from the conduct of its business. If a sale of land from which the timber has been cut, the land being nonmineral, and therefore "not required for mining purposes," is permissible, the sale of standing timber upon nonmineral lands, so remote from the "mine works" as to be useless for mining purposes, is equally admissible, when authorized by the directors. The error assigned must be overruled, and the decree affirmed, in so far as it is involved by this special appeal.