UNITED STATES v. BELLM.

(Circuit Court, E. D. Oklahoma. September 26, 1910.)

(No. Eq. 884.)

1. INDIANS (§ 27*)—LANDS—RIGHT OF UNITED STATES TO MAINTAIN SUIT.

The United States may maintain a suit in its own name to cancel a deed to allotted Indian lands, although made under an order of court, if the sale was in violation of the statutory restrictions on alienation.

[Ed. Note.—For other cases, see Indians, Dec. Dig. § 27.*]

2. INDIANS (§ 20*)—LAND—CONSTRUCTION OF GENERAL ALLOTMENT STATUTE—RESTRICTION ON ALIENATION—LAND OF DECEASED ALLOTTEE.

The general allotment act (Act Feb. 8, 1887, c. 119, § 5, 24 Stat. 389), as amended by Act Feb. 28, 1891, c. 383, 26 Stat. 794, provides that patents shall issue for lands allotted to Indians in severalty thereunder conditioned that the United States will hold the land for the period of 25 years in trust for the sole use and benefit of the allottee or his heirs in case of his death, and that any conveyance or contract made respecting such lands before the expiration of that time shall be absolutely null and void: "Provided that the law of descent and partition in force in the state or territory where such lands are situated shall apply thereto after patents therefor have been executed and delivered except as herein otherwise provided; and the laws of the state of Kansas regulating the descent and partition of real estate shall, so far as practicable, apply to all lands in the Indian Territory which may be allotted in severalty under the provisions of this act." *Held*, that such proviso adopting the laws of descent of the state was merely for the purpose of providing a rule by which the heirs should be determined, and that the partition statutes were adopted only so far as they provided for a division of the land in case the heirs could not agree to hold it in common; that there was no intention of abrogating the trust in any case, and the clause "except as herein otherwise provided" excluded the application of a provision of a state partition statute authorizing a sale of the land where it could not be advantageously divided; and that such a sale of land in the Indian Territory, although under an order of court based on the Kansas statute, was null and void.

[Ed. Note.—For other cases, see Indians, Dec. Dig. § 20.*]

3. STATUTES (§ 219*)—EXTRINSIC AIDS TO CONSTRUCTION — EXECUTIVE CONSTRUCTION.

Where the language of a federal statute is not clear and there is doubt as to its proper construction, the courts will give much weight to the construction given it by the department charged with its execution.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 296, 297; Dec. Dig. § 219.*]

In Equity. Suit by the United States against Charles Bellm. On demurrer to bill. Demurrer overruled.

Paul A. Ewert, for the United States.
S. C. Fullerton, for defendant.

CAMPBELL, District Judge. This is a suit by the United States to cancel a certain instrument, purporting to be a deed from the United States marshal for the Northern District of Indian Territory, to the defendant, conveying to him the land in controversy. The land involved was originally allotted to one Pa-lo-sah, or Lucy Doherty, an Indian of the Eastern Shawnee Tribe, under the provisions of the

---

general allotment act (Act Feb. 8, 1887, c. 119, § 5, 24 Stat. 389), as amended by Act Feb. 28, 1891, c. 383, 26 Stat. 794. The allottee afterwards died, and in February, 1902, it appears that her heirs or a part of them filed a bill in the United States Court for the Northern District of Indian Territory, praying a determination as to heirship, and that the land be partitioned among the heirs of the deceased allottee, and as provided by the laws of Kansas. In due time, the matter was heard, and the court by its decree established the lawful heirs of the allottee, but further found that the land could not be partitioned among the heirs without a manifest injury to the estate, and, following a provision of the Kansas law relating to partition, which provides that in such cases the land may be ordered sold and the proceeds divided among the heirs according to their respective interests, directed that this land should be sold and the proceeds so distributed. Pursuant to this order, the land was offered at public sale by the marshal, and, the defendant being the highest and best bidder therefor, the land was sold to him. Thereafter the court confirmed the sale, and directed the marshal to execute a deed therefor to the defendant, which was done. It is this deed which the government now seeks to set aside and cancel, as a cloud on the title to the land. The defendant has demurred to the bill, and it is this demurrer that is now being considered.

The several grounds of the demurrer, I think, may be reduced to but two questions: The capacity of the United States to maintain the suit, and the contention that there is no equity in the bill. If the government may maintain this action in its own name, then the fact that the amount in controversy does not appear to exceed $2,000, exclusive of interest and costs, is immaterial. United States v. Sayward, 160 U. S. 493, 16 Sup. Ct. 371, 40 L. Ed. 508. If the attempted sale of this land, even though by order of court, was in violation of the acts of Congress relating to its alienability, and under the law as it then existed it was unlawful, even though it might appear that it was impracticable to divide it among the heirs, then the government may maintain the action. United States v. Rickert, 188 U. S. 432, 23 Sup. Ct. 478, 47 L. Ed. 532; United States v. Flournoy, etc., Co. (C. C.) 71 Fed. 576; United States v. Allen (C. C. A.) 179 Fed. 13. This brings us to a consideration of the acts under which this allotment was made and held. The general allotment act of February 8, 1887 (24 Stat. 388), as amended February 28, 1891 (26 Stat. 794), contained the following provisions:

"Sec. 5. That upon the approval of the allotments provided for in this act by the Secretary of the Interior, he shall cause patents to issue therefor in the name of the allottees, which patents shall be of the legal effect, and declare that the United States does and will hold the land thus allotted, for the period of twenty-five years, in trust for the sole use and benefit of the Indian to whom such allotment shall have been made, or, in case of his decease, of his heirs according to the laws of the state or territory where such land is located, and that at the expiration of said period the United States will convey the same by patent to said Indian, or his heirs as aforesaid, in fee, discharged of said trust and free of all charge or incumbrance whatsoever: Provided, that the President of the United States may in any case in his discretion extend the period. And if any conveyance shall be made

of the lands set apart and allotted as herein provided, or any contract made touching the same, before the expiration of the time above mentioned, such conveyance or contract shall be absolutely null and void: Provided, that the law of descent and partition in force in the state or territory where such lands are situate shall apply thereto after patents therefor have been executed and delivered, except as herein otherwise provided; and the laws of the state of Kansas, regulating the descent and partition of real estate shall, so far as practicable, apply to all lands in the Indian Territory which may be allotted in severalty under the provisions of this act."

Under date of March 5, 1891, pursuant to the foregoing acts, a trust patent was issued from the government to the allottee for the allotment in controversy, the habendum clause of which is as follows:

"Know ye that the United States of America, in consideration of the premises and in accordance with the provisions of the fifth section of said act of Congress of February 8, 1887, hereby declares that it does and will hold the land thus allotted (subject to all the restrictions and conditions contained in said fifth section) for the period of twenty-five years, in trust for the sole use and benefit of the said Pa-lo-sah or Lucy Doherty, or in case of her decease, for the sole use of her heirs, according to the laws of the state or territory where such land is located, and that at the expiration of said period the United States will convey the same by patent to said Indian, or her heirs, as aforesaid, in fee, discharged of said trust and free of all charge or incumbrance whatsoever: Provided, that the President of the United States may, in his discretion, extend the said period."

Did Congress by the proviso to section 5 of the general allotment act applying the laws of descent and distribution to these Indian allotments intend that in cases where it might appear to the court to be of manifest injury to the interests of the heirs to divide the same the lands might be sold under order of court? The general provision is that the laws of descent and partition of the state in which any allotment is situated shall apply thereto, except as in the act otherwise provided. In applying this general provision, however, it became necessary to designate the particular laws of descent and partition which should govern in Indian Territory, for the reason that there was then no organized state or territorial government in Indian Territory; and hence the laws of Kansas on these subjects were adopted "so far as practicable." It is not questioned that the laws of descent applicable in any such case determined who should be the heirs to the allotment of any deceased allottee, and that such heirs have the same rights as were enjoyed by the allottee under his trust patent, subject to the same restrictions; nor is it questioned that the allotment might be divided among the heirs as provided in the particular jurisdiction for partition of land among persons not Indians. But it is contended by the defendant, and denied by the complainant, that as provided in the Kansas law, if partition cannot be made without manifest injury, the commissioners appointed by the court were authorized to value and appraise the property, whereupon any one or more of the parties might elect to take the property at the appraisement, or, in case that should not be done, that the court should make an order directing the sheriff to sell, as in the case of real estate on execution, but at not less than two-thirds of the appraised value, and, if such sale should be approved by the court, the sheriff should execute a deed to the purchaser.

On May 27, 1902, Congress passed an act (Act May 27, 1902, c. 888, 32 Stat. 275) relating to sale of inherited lands, reading as follows:

"Sec. 7. That the adult heirs of any deceased Indian to whom a trust or other patent containing restrictions upon alienation has been or shall be issued for lands allotted to him may sell and convey the lands inherited from such decedent, but in case of minor heirs their interests shall be sold only by a guardian duly appointed by the proper court upon the order of such court, made upon petition filed by the guardian, but all such conveyances shall be subject to the approval of the Secretary of the Interior, and when so approved, shall convey a full title to the purchaser, the same as if a final patent without restriction upon the alienation had been issued to the allottee. All allotted land so alienated by the heirs of an Indian allottee and all land so patented to a white allottee shall thereupon be subject to taxation under the laws of the state or territory where the same is situate: Provided, that the sale herein provided for shall not apply to the homestead during the life of the father, mother, or the minority of any child or children."

This act was also in force at the time the allotment under consideration was by the court ordered sold and when the marshal's deed was executed. It appears that the deed was never approved by the Secretary of the Interior. My attention is not directed to, nor have I been able to find, any reported case where this question has been considered. On December 4, 1905, on a request from the Secretary of the Interior, the Attorney General had occasion to consider the question whether the United States Court for Indian Territory had jurisdiction to decree a partition and sale of inherited Indian lands in the Quapaw Tribe, covered by patent, without the approval of the Secretary. 25 Opinions of Attorneys General, p. 532. By Act April 28, 1904, c. 1824, 33 Stat. 573, as appears from the opinion, Congress had provided that the laws of Arkansas, theretofore put in force in the Indian Territory, should be continued and extended in their operation so as to embrace all persons and estates in said territory, whether Indian, freedmen, or otherwise, and conferred full and complete jurisdiction upon the district courts in said territory in the settlement of all estates of decedents, the guardianship of minors, and incompetents, whether Indians, freedmen, or otherwise. On the question as to whether this act gave the courts jurisdiction to decree such sales without the Secretary's approval, he says:

"Under this and prior laws the courts have exercised jurisdiction to determine the claims of descent in the cases of allotments, and I do not understand that you intend to raise any doubt of their jurisdiction except as to their right to order a sale without your approval, and concerning the necessity for notice to the United States of the proposed proceeding in court leading up to the sale. It is my opinion that the laws giving the courts jurisdiction, including that of April 28, 1904, do not disturb the authority of the Secretary to approve or disapprove the sales. If the act of 1904 should be regarded as taking away the power of the Secretary, the result would be that the lands could not be sold at all, since the only authority to do away with the 25 years inalienability is the act of 1902, authorizing sale to be made with the Secretary's approval; but I am convinced that there was no intention to interfere with your authority in that regard."

It is here expressly held that the only authority to do away with the 25 years' inalienability is the act of 1902, quoted above, relating to the sale of inherited lands, subject to the Secretary's approval. This

amounts to holding that by the proviso providing for partition Congress did not intend that the portion of the partition statute relating to sale of the allotment should apply, notwithstanding the general restriction upon alienation for the term of 25 years. This departmental construction of the acts in question is entitled to much weight. As said by Justice Brown in U. S. v. Ala. R. R. Co., 142 U. S. 616, 12 Sup. Ct. 306, 35 L. Ed. 1134:

"It is a settled doctrine of this court that in case of ambiguity the judicial department will lean in favor of a construction given to a statute by the department charged with the execution of such statute."

Where there is any question of doubtful construction and the language of the statute is not clear, the construction given to it by the department charged with the duty of enforcing it is given much weight. Of course, where the language is clear and not fairly susceptible of more than one construction, a clearly erroneous departmental construction would not be followed. U. S. v. Tanner, 147 U. S. 661, 13 Sup. Ct. 436, 37 L. Ed. 321. To my mind, the construction of section 5 of the general allotment act with the proviso relating to descent and partition is not entirely free from doubt. It was presumably the opinion of the judge of the Northern District of Indian Territory that the provision of the Kansas partition statute, relating to sale of the property, applied; otherwise, he would not have ordered the land sold. It will be noted that the laws of descent and partition are to apply, "except as herein otherwise provided." What is it referred to as being "herein otherwise provided"? There is no provision in the act contrary to the descent of the allotment on the death of the allottee to his heirs, because it is provided that the land shall be held by the United States in trust for the use and benefit of the allottee, or, in case of his decease, of his heirs. There is no provision in the act contrary to a partitioning of a deceased allottee's land among his heirs according to their respective interests, at least pending the issuance of final patent; but there is the general provision against alienation either by the allottee or the heirs pending the issuance of the final patent, and this provision is in conflict with that portion of any partition statute which might as in the case of the Kansas statute provide for the sale of the inherited land under given circumstances. Regarding statutory provisos, Circuit Judge (now Justice) Lurton, speaking for the court, in Baggaley v. Pittsburg, etc., Iron Co., 90 Fed. 636, 33 C. C. A. 202, said:

"We are not unmindful that the ordinary office of a proviso is to except out of an act that which would otherwise be included, but this rule must not be carried too far. Such clauses are often introduced from excessive caution, and for the purpose of preventing a possible misinterpretation of the act by including therein that which was not intended. The rule is therefore not one of universal application, and must yield to the cardinal rule which requires a court to give effect to the general intent, if that can be discovered within the four corners of the act."

The "patent" under which the allottee, Pa-lo-sah or Lucy Doherty, held was what the courts have come to term a "trust patent." Of this instrument Justice Harlan, in United States v. Rickert, supra, says:

"The word 'patents,' where it is first used in this section, was not happily chosen to express the thought which, it is clear, all parts of the section be-

ing considered, Congress intended to express. The 'patents' here referred to (although that word had various meanings) were, as the statute plainly imports, nothing more than instruments or memoranda in writing, designed to show that for a period of 25 years the United States would hold the land allotted, in trust for the sole use and benefit of the allottee, or, in case of his death, of his heirs, and subsequently, at the expiration of that period, unless the time was extended by the President, convey the fee, discharged of the trust and free of all charge or incumbrance. In other words, the United States retained the legal title, giving the Indian allottee a paper or writing, improperly called a patent, showing that at a particular time in the future, unless it was extended by the President, he would be entitled to a regular patent conveying the fee. This interpretation of the statute is in harmony with the explicit declaration that any conveyance of the land or any contract touching the same while the United States held the title in trust should be absolutely null and void. So that the United States retained its hold on the land allotted for the period of 25 years after the allotment, and as much longer as the President, in his discretion, should determine."

It is my opinion that having provided that the allotment should be held in trust for the benefit of the heirs in case of an allottee's death the proviso adopting the laws of descent of the state was merely for the purpose of providing a rule by which the heirs could be determined, and that the partition statute was only adopted so far as it provided for a division of the land by a court proceeding in case for any reason the heirs could not agree to hold it in common pending the issuance of final patent conveying the fee. While, as it appears the court found in this case, it might occasionally happen that a division in kind could not be advantageously made, I think that, notwithstanding this, it was the intention of Congress that without exception any conveyance of the land or any contract touching the same while the United States held it in trust should be absolutely null and void. Thus the law stood until the act of 1902, supra, providing for the sale of inherited allotments by the heirs, subject to the approval of the Secretary of the Interior. The heirs in this case could have availed themselves of this statute, and, by proper probate court proceedings in case of minors, and securing the Secretary's approval, have legally disposed of the land. If the act did not authorize the sale of the land as attempted in this case, then the fact that it was pursuant to a decree or order of court lends no validity to the transaction. Goodrum v. Buffalo, 162 Fed. 817, 89 C. C. A. 525.

For the foregoing reasons, the demurrer will be overruled.