[No. 21531. Department Two. April 5, 1929.]

PAUL H. CREEL, *Respondent*, v. WALTER B. NETTLETON, *Appellant.*[1]

[1]Reported in 276 Pac. 91.

*Kerr, McCord & Ivey,* for appellant.
*Nelson R. Anderson,* for respondent.

MILLARD, J.—This action was instituted for the recovery of the balance due on the purchase price of antique furniture or heirlooms. The defendant pleaded fraudulent misrepresentation and rescission of the contract as to the amount alleged to be due. The cause was tried to the court, and resulted in findings and judgment in favor of the plaintiff, from which the defendant appealed.

The parties herein are cousins. In the ancestral home in Louisville, Kentucky, was furniture that may now be classified as antiques or heirlooms, being approximately a century old. The appellant, as a boy, of seven to nine years, frequently visited that home with his cousin. It is not clearly established by the evidence that the appellant has, since that time, had opportunity to observe the furniture. It is clear, however, that he desired the retention of the heirlooms in the family. Antedating his purchase which is the subject-matter of this controversy, he bought other pieces of furniture from the old home. On October 10, 1925, respondent, who resides in Washington, D. C., wrote to appellant, who is a resident of Seattle, describing some of the remaining furniture he had for sale. The pertinent portion of that letter is as follows:

"The sideboard, I do not think could be reproduced today for $2500, but I will take $1000 for it; the desk, I have no idea what would cost to reproduce. However, I will take $500 for it, and the sofa, which is mahogany rim, I suppose you would recall it, covered with hair cloth, I will take $250 for. These prices are all f. o. b., Louisville, Ky."

The appellant, in his reply of November 11, 1925, requested respondent to hold the matter open for a few days, stating:

"I am, of course, much interested in your suggestion about the old furniture. I should myself regret very much to see this furniture go out of the family, and as long as we now have some of Aunt Mary Ann's furniture in our house we should naturally like to have more. I am a little loath to tie up any money in anything of this kind right now . . . but rather than see it go elsewhere I will endeavor to arrange to take it."

Appellant was advised by telegram of December 16, 1925, of the dimensions of the sideboard, and given a further description of the furniture. The appellant telegraphed respondent December 18, 1925, the following offer:

"You may ship furniture provided you make price fifteen hundred on entire lot terms one-third upon arrival, balance three and six months see letter."

His letter reads:

"Your wire of the 16th received and I have just replied as per enclosed confirmation. I feel very much like I am buying a 'pig in a poke' but I am relying entirely upon your statements of value, feeling that your ideas have been properly confirmed before you have submitted the values to me.

"The offer which I am making you being less than your offer to me requires explanation, and is based on the fact that the price particularly of the desk seems to me high. We have a very fine Dutch Marquetry desk which is a genuine antique, that is inlaid on three sides, for which we paid $250, and I cannot imagine any piece of furniture being more beautiful than this one. This is my reason for making the offer at $250 less than your price. I assume that the other pieces are worth the amount at which you offer them. Even if they could be purchased for less money, the sentiment connected with them is worth something to me. You probably also realize that the freight will be rather high on this lot to Seattle, so that the reduction of $250 will help to defray that expense. There is also danger of damage in transit, which cannot be collected from the railroads."

Respondent's telegraphic acceptance of the counter offer was unconditional; "Telegram and letter received. Offer accepted. Shipment being made as directed."

Appellant notified respondent February 4, 1926, that the furniture had been received, expressed disappointment in same and made the following proposition for the return of the sideboard to the respondent:

"I am very, very much disappointed and do not see how you could have possibly described these pieces in the glowing terms which you did in your first letter and could expect to get the amount of money for them which you have charged me. . . . I will return the sideboard to you, prepaying all expense of crating and shipping, to whatever destination you may suggest. This will not put you to any expense in connection with the matter, and I will retain the couch, desk and chair, for which I will pay you $500—although I am satisfied that a couch such as this one is can be purchased here for not to exceed $150, and the desk at not to exceed the price I am paying you. . . . I have no doubt but that the values you name have been your honest opinion, but inasmuch as they are so different from mine, I feel that this solution of the case would be most satisfactory all around. I trust that this will meet with your approval. If so, I will attend to the reshipment of the sideboard at once and remit the $500 for the other pieces."

Respondent by letter of February 9, 1926, rejected the proposition:

"I accepted the offer that you made on the entire lot. You will recall that I offered you these pieces separately at prices which aggregated $1,750. However, you made me a counter offer of $1,500 net to me, $500 upon arrival, $500 in three months, and $500 in six months. . . . You will recall that I drew your attention to the fact that I desired, if possible, to have this furniture remain in the family and gave you the opportunity of purchasing it before I considered an

offer from outside. After much deliberation on your part you made me the offer. I accepted it, . . .''

The appellant placed in his home the sofa, desk and chair. He sent the sideboard to a friend in Seattle, in whose dining room it was in use from that time to the date of the trial of this action, two years later. Appellant's secretary remitted to respondent five hundred dollars on March 10, 1926, and informed respondent that the balance would be left for the adjustment of appellant on his return to Seattle.

The appellant's defense to the action to recover the balance of one thousand dollars was that he accepted and paid for the desk, chair and sofa, but that the sideboard was not accepted because of false representations as to its value. In substance, the trial court's findings were that the agreement was an entire contract for the sale of the several pieces of furniture for a lump sum; that there was no fraud in the transaction between the parties, and that appellant accepted all of the furniture. Upon these findings, judgment was entered for respondent for the balance due on the contract.

The assignments of error present the following question: May the appellant rescind as to the sideboard, and affirm the contract as to the other furniture included in the agreement?

If this contract were divisible as to the subject-matter and the appellant had grounds for rescission as to one article, he might rescind as to it and affirm the contract as to the other items. However, the contract herein is entire, and the general principle of law applicable is that, if the appellant would rescind the contract, he must rescind it *in toto;* he can not disaffirm it in part, and enforce it in part. He must place the other party in *statu quo.* The furniture was offered to appellant for seventeen hundred and fifty dollars by

the piece. He did not accept that offer, but countered with an offer of fifteen hundred dollars for the entire lot of four pieces. Respondent accepted appellant's offer.

In *Berlin Machine Works v. Miller*, 59 Wash. 572, 110 Pac. 422, we reiterated the general rule enunciated in *Nelson v. John*, 43 Wash. 483, 86 Pac. 933, that,

" . . . when several articles are sold for a single and entire consideration, without any apportionment of the purchase price between them, the contract of sale is entire and cannot be severed except by the agreement of the parties,"

and said that one of the exceptions to the rule existed where the remaining parts of the contract made it clear that such result was not intended; that the entirety of a contract depended on the intention of the parties, and that the intention was to be gathered from a consideration of the whole contract.

It is manifest that the parties did not intend any apportionment of the fifteen hundred dollars among the four pieces of furniture. Though the purchase price could be expressly or impliedly apportioned to each piece of furniture covered by the contract, the correspondence evinces the intention of the parties to treat the contract as an entirety. The counter offer of the appellant for the entire lot for a lump sum negatives any intention to sell each article separately.

"The entirety of a contract depends upon the intention of the parties, and not on the divisibility of the subject-matter. The severable nature of the latter may often assist in determining the intention, but will not overcome the intent to make an entire contract, when that is shown." 23 R. C. L., p. 1341, § 164.

The contract was entire. Appellant's acceptance of some of the articles is binding upon him as an acceptance of all of the furniture.

446

Appellant contends that the actual value of the sideboard was so grossly misrepresented as to constitute fraud. The misrepresentation is contained in the first letter from respondent to appellant:

"The sideboard, I do not think could be reproduced today for $2,500, but I will take $1,000 for it."

It is true that the sideboard, as an antique or as an heirloom, could not be reproduced or duplicated at the price named, or, in fact, at any price. An antique may be counterfeited, but not reproduced. To some people, an heirloom has a sentimental value. That value may not be appraised in dollars and cents. The evidence of the value of the sideboard ranged from seventy-five dollars to two thousand dollars. However, this was not a commercial transaction. The parties are relatives. Appellant did not rely upon the statement as to the value of the sideboard. The real value of the sideboard, as a piece of furniture or as an antique, was not in the minds of the parties. Appellant bought the furniture because it had been in the family of one of his ancestors. Indicative of that desire he said:

"Even if they could be purchased for less money, the sentiment connected with them is worth something to me."

Assuming that the respondent was guilty of fraudulent misrepresentation as to the value of the sideboard, the appellant, by his conduct, waived his right of rescission. The appellant's exercise of dominion over all of the furniture was inconsistent with the ownership of respondent. He accepted three of the pieces of furniture and placed them in his own home. He sent the sideboard to the home of a friend, who used it continuously in his dining room for more than two years, and it was in the home of that friend at the time of the trial of this case.

"And since a sale is voidable only at the option of the buyer, to entitle him to rescind he must act promptly on the discovery of the fraud, and if after discovering the fraud he acquiesces in the sale, either by express words or by an unequivocal act or unreasonable delay he will be deemed to have affirmed the sale and he cannot afterwards rescind. Thus if the buyer after discovery of the fraud by unequivocal acts treats the property as his own he waives his right of rescission." 24 R. C. L., p. 356, § 646.

The judgment is affirmed.

MITCHELL, C. J., FRENCH, PARKER, and MAIN, JJ., concur.