## MORGAN v. TENNESSEE VALLEY AUTHORITY et al.
### No. 250.

District Court, E. D. Tennessee, at Knoxville.

Aug. 11, 1939.

Cassels, Potter & Bentley, of Chicago, Ill., and Ayres, Broughton & Parkey, of Knoxville, Tenn., for complainant.

James L. Fly, Wm. C. Fitts, Jr., and Olen Henderson, all of Knoxville, Tenn., for defendants.

TAYLOR, District Judge.

The complainant, by this action, brings into question the power, under the terms of the Tennessee Valley Authority Act, 16 U.S.C.A. § 831 et seq., of the President of the United States to remove him from membership upon the board of directors of the defendant Tennessee Valley Authority.

Under the pleadings as clarified and narrowed by statements made by counsel representing the parties, but two questions are presented. The first question is whether this court has jurisdiction, and is raised by a motion to dismiss. The case was brought in the Chancery Court for Knox County, Tennessee, and removed to this court by the defendants.

The · question of jurisdiction would merit consideration and a discussion of the pertinent authorities, but for the fact that the case of Tennessee Valley Authority et al. v. Tennessee Electric Power Co., 6 Cir., 90 F.2d 885, 887, in an opinion written by Judge Simons, passes upon the question. In deciding that case it was said:

"Jurisdiction must, of course, be first examined. The Tennessee Valley Authority is a public agency. By the terms of the statute creating it, its domicile is in Alabama. Therefore it is asserted that under the laws of Tennessee actions against it are local and not transitory, and may be

brought only in a court of competent jurisdiction at the place of its domicile, and this notwithstanding the fact that the bill charges lack of legal or constitutional authority for acts being or threatened to be performed in Tennessee. * * *

"The laws relating to venue of civil suits are well understood, particularly since the clarification of their interpretation in Lee v. Chesapeake & Ohio Ry. Co., 260 U. S. 653, 43 S.Ct. 230, 67 L.Ed. 443. The present suit was begun in a state court of Tennessee. Under the authority of section 28 of the Judicial Code (28 U.S.C.A. § 71), it was removed to that United States District Court within the jurisdiction of which the state court action was pending. Whether a suit may be removed depends upon whether it could have been brought originally in the Federal District Courts, which by section 24 of the Judicial Code (28 U.S.C.A. § 41) so far as applicable, have original jurisdiction of all suits of a civil nature, at common law or in equity, which arise under the Constitution or laws of the United States. This being such a case, it could have been brought originally in a federal court. The test of removability is not whether the suit could have been brought in the particular district to which it was removed, but whether it could have been brought at all in a federal District Court. The venue of such suit after removal is not the district in which it might have originally been brought, but is the district in which the case is pending, for the right to remove is a personal privilege of the defendant, which he may assert or may waive. * * *

"But while venue is waived by removal of a cause from a state into a federal court, want of jurisdiction in the state court is not cured thereby, but may be asserted after removal is consummated. * * * [supported by authorities].

"The state court had jurisdiction, and the court below acquired it by removal."

In this case, Circuit Judge Allen wrote a separate concurring opinion, and Judge Moorman wrote a dissent, in which he expressed the opinion that the bill should be dismissed because it presented no justiciable question, leaving the rather clear implication that he would have concurred had the bill stated a case or controversy under the removal statute. Nothing further need be said with reference to the question of jurisdiction, since this case, with which I fully agree, is controlling upon this court, the facts, so far as material, not being distinguishable in principle.

In support of its motion to dismiss, the defendant through its counsel in opening statements presented the second question for consideration, as follows: " * * * the only question presented is whether or not the President, as the chief executive of the United States, acted within the scope of his power in removing the plaintiff as director of the Tennessee Valley Authority. * * * There is no suggestion here that it (the removal from office) was arbitrary or capricious, that it was summarily taken. It was taken after inquiry, and for a stated cause. At the same time, on our side, we ought to concede, and do concede, that the President did not undertake to remove the plaintiff for any specific ground laid down in the statute. Under these circumstances it would seem that the question is raised as to whether the President had any power of removal beyond that laid down in the Act. If the President had such a power, there would be no doubt that it was properly exercised here, and plaintiff would have no ground for complaint. * * * Now under plaintiff's theory of construing the statute so as to create by implication a statutory restriction on the chief executive's power of removal, we would of course be driven, and I submit we would only be driven in case of necessity, directly into a grave constitutional issue. On that issue, if deemed pertinent by the court, the Government would take the position that such a statutory restriction as my friends urge here would be unconstitutional as an encroachment upon the constitutional authority of the chief executive."

This same question, as stated by counsel for the plaintiff, is: " * * * at the outset I think I can well agree * * * for the defendant that there are really only two points involved in this case. The first point is the construction of this statute, whether this statute is to be construed as limiting the power of the President to remove a director of the Tennessee Valley Authority to the causes provided in section 6 of the Act [16 U.S.C.A. § 831e]. I would agree further with counsel that if it is so limited * * * to those causes mentioned in section 6, that you have a further question, as to whether such limitation is within the power of Congress."

By these statements made by counsel the issues presented are clear, well defined

and obviate the necessity of any review of the pleadings.

To state the question even more succinctly, the question presented is whether the statute by its terms undertakes to limit the power of the President as to the causes for which he may remove a director, and if it so undertakes, whether, under the constitution of the United States, such limitation is valid.

The provisions of the Tennessee Valley Authority Act, 16 U.S.C. sec. 831 et seq., 16 U.S.C.A. § 831 et seq., in so far as material to a determination of the issues here presented, provide for the creation of a corporation with a board of directors composed of three members to be appointed by the President, by and with the advice and consent of the Senate. Sec. 831a and 831g of Title 16 provide for the appointment and compensation of the directors; and limit the field of eligibility for appointment by excluding persons having financial interest in a public utility corporation engaged in the business of distributing and selling power to the public, or in any corporation engaged in the manufacture, selling or distribution of fixed-nitrogen or fertilizer or any ingredients thereof, or any interest in any business that may be adversely effected by the success of the corporation as a producer of concentrated fertilizer, or of electric power, and excludes any person who does not possess a belief in the feasibility and wisdom of the objectives sought by the Act.

Sec. 831e provides: "In the appointment of officials and the selection of employees for said Corporation, and in the promotion of any such employees or officials, no political test or qualification shall be permitted or given consideration, but all such appointments and promotions shall be given and made on the basis of merit and efficiency. Any member of said board who is found by the President of the United States to be guilty of a violation of this section shall be removed from office by the President of the United States, and any appointee of said board who is found by the board to be guilty of a violation of this section shall be removed from office by said board."

Sec. 831c(f) of Title 16 provides in part: "The board shall select a treasurer and as many assistant treasurers as it deems proper, which treasurer and assistant treasurers shall give such bonds for the safe-keeping of the securities and moneys of the said Corporation· as the board may require: Provided; That any member of said board may be removed from office at any time by a concurrent resolution of the Senate and the House of Representatives."

There are a number of instances in the Act of delegation of specific authority to the President to do certain things in connection with effecting the objects of the statute, some of which specified powers are limited in point of time of their performance, and others are continuous.

It is the contention of the plaintiff that the provisions of Title 16, sec. 831e, United States Code Annotated, show an intention on the part of the Congress to limit the power of the executive in the matter of removal of directors to such of them as are found by him to be guilty of having violated the provisions of that particular section.

It is the contention of the defendant that the language of this particular section has no relation to the power of removal ordinarily vested in the executive branch of the Government dealing with executive officers or officers predominantly engaged in the performance of executive functions, but that it is a mandate that in instances where it is found by the President that the director has been guilty of violations of the section prohibiting the selection of employees on any basis other than merit and efficiency shall be removed, and that there is no language employed in the statute which fairly construed takes away the right of removal, whether it be a mere incident to the power to appoint or a constitutional grant.

The broad question whether in the constitution of the United States the chief executive has a grant of illimitable and exclusive power to remove his appointees in the executive department has been before the courts since almost the very beginning of our government under the constitution. It has also been the subject of legislative debate and decision as early as in the celebrated House debate of 1789.

The whole field is covered in the majority and dissenting opinions in the case of Myers v. United States, 272 U.S. 52, 47 S.Ct. 21, 71 L.Ed. 160. A reference to this case and the dissenting opinions by Justice Holmes, Justice McReynolds and Justice Brandeis, and the cases there cited shows that they cover the whole field of executive power of removal, whether as an in-

cident to the power to appoint or as a constitutional grant of power, and whether the power attaches to all appointees of the executive, and whether the power is exclusive and illimitable only in cases where the appointee is charged with the performance of purely executive duties, or whether the power attaches in all cases of appointments whether by and with the advice and consent of the Senate, and whether the duties are purely executive, or partly executive and partly quasi legislative and quasi judicial. These questions are all exhaustively considered and discussed. This was a case in which Meyers, a postmaster, had been appointed by the President by and with the advice and consent of the Senate, had been removed and had instituted suit for his salary for the term for which he had been appointed. In deciding that case the court said in part (272 U.S. at page 161, 47 S.Ct. at page 40, 71 L.Ed. 160: "Assuming, then, the power of Congress to regulate removals as incidental to the exercise of its constitutional power to vest appointments of inferior officers in the heads of departments, certainly so long as Congress does not exercise that power, the power of removal must remain where the Constitution places it, with the President, as part of the executive power, in accordance with the legislative decision of 1789 which we have been considering." This settles the question whether purely executive officers whose appointment is made by the President of the United States, even though by and with the advice and consent of the Senate, may be removed by the President, even though the Congress undertakes by the legislation creating the office to limit the President's right of removal to such removals as are by and with the advice and consent of the Senate.

Another phase of the question was before the court in Humphrey's Executor v. United States, 295 U.S. 602, 55 S.Ct. 869, 79 L.Ed. 1611. Humphrey was a member of the Federal Trade Commission, a Commission which involved the exercise of executive, quasi legislative and quasi judicial functions. The Act creating the office provided in part "any commissioner may be removed by the President for inefficiency, neglect of duty, or malfeasance in office." 15 U.S.C.A. § 41. The President removed him for neither of the stated causes, but for another assigned cause.

The executor sued for the salary from the date of his removal to the date of his death. The questions before the court were, (1): "Do the provisions of sec. 1 of the Federal Trade Commission Act stating that 'any commissioner may be removed by the President for inefficiency, neglect of duty, or malfeasance in office', restrict or limit the power of the President to remove a Commissioner except upon one or more of the causes named?" and (2): "If the power of the President to remove a Commissioner is restricted or limited as shown by the foregoing interrogatory, and the answer made thereto, is such a restriction or limitation valid under the constitution of the United States?" The Supreme Court decided that such statutory provision did constitute a limitation, and that the limitation was valid under the constitution. In deciding the case the court said, in part, 295 U.S. at page 624, 55 S.Ct. at page 872, 79 L.Ed. 1611: "Its duties are neither political nor executive, but predominantly quasi judicial and quasi legislative. Like the Interstate Commerce Commission, its members are called upon to exercise the trained judgment of a body of experts 'appointed by law and informed by experience'"; citing Illinois Central Railroad Co. v. Interstate Commerce Commission, 206 U.S. 441, 454, 27 S.Ct. 700, 51 L.Ed. 1128; Standard Oil Co. v. United States, 283 U.S. 235, 238, 239, 51 S.Ct. 429, 75 L.Ed. 999. Further in the opinion, 295 U.S. at page 631, 55 S.Ct. at page 875, 79 L.Ed. 1611, the court said:

"The result of what we now have said is this: Whether the power of the President to remove an officer shall prevail over the authority of Congress to condition the power by fixing a definite term and precluding a removal except for cause will depend upon the character of the office; the Myers decision, affirming the power of the President alone to make the removal, is confined to purely executive officers; and as to officers of the kind here under consideration, we hold that no removal can be made during the prescribed term for which the officer is appointed, except for one or more of the causes named in the applicable statute.

"To the extent that, between the decision in the Myers Case, which sustains the unrestrictable power of the President to remove purely executive officers, and our present decision that such power does not

extend to an office such as that here involved, there shall remain a field of doubt, we leave such cases as may fall within it for future consideration and determination as they may arise".

While it is not here necessary to decision and is not decided, it may be assumed that the facts of the case before me bring it within the principle announced in the case of Humphrey's Executor v. United States, supra, so that the Congress, under the constitution, had the power to prescribe valid limitations with respect to removal of directors of the Tennessee Valley Authority.

This brings us then to a consideration of the question presented here, that is, whether there is to be found in the statute such limitation of the executive power of removal. Aside from the statutory provisions which are relied upon to show that the board of directors exercises quasi legislative and quasi judicial as well as executive functions, the language relied upon as constituting the limitation is found in sec. 831e, 16 U.S.C.A., hereinabove quoted.

It is not contended that there is any express provision in the Act limiting the power of the chief executive. It is argued that because the statute elsewhere provides for the removal of directors at any time by a concurrent resolution of the Senate and House of Representatives, which resolutions require no executive approval, and because the Act directs the removal from office by the President of the United States for the causes referred to in sec. 831e of Title 16 of the United States Code, 16 U.S.C.A. § 831e, that settled rules of construction require a decision that such language constitutes an implied limitation of executive power to remove. Bearing in mind that the removal of the director here suing was for neither of the causes mentioned in sec. 831e, and further bearing in mind that the removal was otherwise valid unless the provision of sec. 831e constitutes a limitation of power, it is apparent that the precise question here for decision is narrower than that considered in any of the cases herein referred to.

The cases relied upon by the plaintiff in support of this statutory construction are Humphrey's Executor v. United States, supra; Raleigh & Gaston Railroad Co. v. Reid, 13 Wall. 269, 270, note, 20 L.Ed. 570; Smith v. Stevens, 10 Wall. 321, 326, 327, 19 L.Ed. 933.

In Raleigh & Gaston Railroad Co. v. Reid, supra, the statute provided conditions under which certain railroad property might be taxed, and the decision and the language employed in it shows its inapplicability to the question before the court here. The opinion states in part [13 Wall. 270, 20 L.Ed. 570]: "The unwisdom of this legislation is apparent, but there is no relief to the state, for the rights secured by the contract are protected from invasion by the Constitution of the United States." The legislation assailed provided a method for taxation, and under its provisions rights became vested. The court simply decided that subsequent taxation not in accord with the legislation as understood and acted upon by the parties would in effect impair the obligations of a contract.

In Smith v. Stevens, supra, the legislation protected from alienation certain Indian property. It provided a method by which the property might be alienated. The title to the land was originally in the United States. The land was set apart for the use of half breeds, and the legislation declared void all prior contracts for their sale, and forbade any future disposition of them, "except by the Secretary of the Interior, on the request of the party interested." The court said in part: "It needs no argument or authority to show that the statute, having provided the way in which these half-breed lands could be sold, by necessary implication prohibited their sale in any other way."

In the case of Humphrey's Executor v. United States, supra, relied upon by the complainant in support of its contention that the Act here under consideration limited, by implication, the executive power of removal, the court rejected what had been understood as the court's ruling in the case of Shurtleff v. United States, 189 U.S. 311, 23 S.Ct. 535, 47 L.Ed. 828, that the maxim expressio unius est exclusio alterius had no application in cases where a limitation of executive power of removal was involved, and explained that decision upon the ground that the facts presented outweighed the language relied upon as limiting by implication such executive power of removal. The Shurtleff case had been considered as holding that in cases where such limitation of executive power was involved, that it would require "plain language to take it away". The holding in the Humphrey case has been hereinabove discussed, and for the purpose of the present

inquiry, that is, the limitation of power by implication, suffice it to say that the Humphrey case holds that it may be so limited. It holds that the maxim expressio unius est exclusio alterius is to be given consideration in cases where the executive power is involved, as well as in other cases involving statutory construction. The language relied upon as so impliedly limiting the executive power in the instant case has no reference to executive power, but is a direction to the executive to exercise the power of removal in certain instances. Applying the maxim expressio unius est exclusio alterius to a statute nowhere dealing with the executive power of removal, the result is that the executive is not directed to exercise his constitutional or incidental power of removal, except in cases specifically set out in sec. 831e, Title 16, United States Code. As to other causes or grounds for removal there is no legislative mandate.

The Congress enacted the legislation before the case of Humphrey's Executor v. United States, supra, had been decided. The legislation was enacted, therefore, at a time when Congress is presumed to have known that the Supreme Court had decided that the limitation of executive power with respect to removal must be in "very clear and explicit language". That "it should not be held to be taken away by mere inference or implication". The situation would be no different, however, had the legislation been enacted subsequent to the decision in the Humphrey case, for the reason that the subject of the power of removal by the executive is nowhere expressly dealt with in the statute, nor does any part of the statute set forth specifically the causes for which the President may remove the director. Such a provision might be deemed a belief on the part of the Congress that such a grant of power would be essential; that the right or power did not exist without the grant, but no such inference or implication arises from the language involved in this statute. The complainant would have the Act read "the President may remove directors" for the causes mentioned in sec. 831e, Title 16, United States Code. If it so read the maxim expressio unius est exclusio alterius would be an important factor. But I am of opinion that this provision of the Act here involved in no sense deals with the question of executive power of removal. I am further of opinion that the chief executive has the power of removal as an incident to the power of appointment, or under constitutional grant of authority, or both, in the absence of legislative limitation, whether or not the officer involved is predominantly engaged in the exercise of quasi legislative or quasi judicial functions. I am of opinion that the statute here involved, construed by settled rules, shows no legislative intent to limit the power of the executive with respect to removal, and in the absence of such intent the power exists. I am further of opinion that any attempted legislative limitation should be either by express provision, or by the clearest implication.

One other matter remains for disposition; that of the motion of complainant to strike certain documents from the record. The motion relates to Senate Document No. 155 (75th Congress, 3rd Session), entitled "Removal of a member of the Tennessee Valley Authority", "Exhibits vol. 1", and "Exhibits vol. 2", mentioned in the stipulation of the parties. I am of opinion the motion is well taken, and it is accordingly sustained. The motion does not relate to exhibit "B" to the bill of complaint, though that exhibit is also a part of Senate Document No. 155.

Entertaining the view hereinabove expressed, the bill of complaint will be dismissed.