## MORGAN v. TENNESSEE VALLEY AUTHORITY.

### No. 8427.

Circuit Court of Appeals, Sixth Circuit.

Dec. 6, 1940.

E. H. Cassels, of Chicago, Ill. (Len G. Broughton, of Knoxville, Tenn., and Richard H. Merrick, of Chicago, Ill., on the brief), for appellant.

Melvin H. Siegel, of Washington, D. C., and Wm. C. Fitts, Jr., of Knoxville, Tenn. (Francis M. Shea, of Washington, D. C., and Joseph C. Swidler and Charles J. McCarthy, both of Knoxville, Tenn., on the brief), for appellees.

Before SIMONS, ALLEN and HAMILTON, Circuit Judges.

SIMONS, Circuit Judge.

The appellant was removed by the President of the United States from his position as a member and chairman of the Board of Directors of the Tennessee Valley Authority, and denies the power of the President so to do. His suit for salary and for a declaratory judgment that his removal was unlawful, brought in a Tennessee court and transferred to the court below, was dismissed for failure to state a claim upon which relief could be granted. 28 F.Supp. 732.

Prior to his removal, and since the organization of the Tennessee Valley Authority, the appellant was a duly qualified member of its Board of Directors, designated by the President as its chairman, and appointed for a stated term expiring nine years after the approval of the Act, as provided by Title 16, U.S.C.A., § 831a(b). He was removed prior to the expiration of the term, following conferences between the President and the directors, but not in pursuance of § 831e, which in mandatory phrasing hereinafter recited, provides for removal of a member of the Board by the President for violating a command to make all appointments and promotions on the basis of merit and efficiency without consideration of political tests or qualifications. The appellant has continuously objected to his removal, and has held himself out as ever ready and willing, if permitted, to continue in the performance of his duties as a member and chairman of the Board. He contends that, by its terms, the T.V.A. Act provides specifically for but two methods of removal, one by the President for causes not here involved, and the other by Congress with or without cause, and that the two methods are exclusive, notwithstanding the holding in Myers v. United States, 272 U.S. 52, 47 S.Ct. 21, 71 L.Ed. 160, that the power to remove executive officers appointed by the President, is conferred upon him by the Constitution and so may not be abrogated by statute, because the Tennessee Valley Authority is an independent agency of the government exercising quasi-legislative functions with the members of its Board of Directors responsible to Congress and not to the President, and having been appointed for a fixed term, may not be removed prior to its expiration, as held in Humphrey's Executor

v. United States, 295 U.S. 602, 55 S.Ct. 869, 79 L.Ed. 1611.

The appellant's contention requires consideration of the two provisions of the Act which deal with removal of directors from office, and of the nature and function of the Authority. Section 4(f), 16 U.S.C.A. § 831c(f), provides: "The board shall select a treasurer and as many assistant treasurers as it deems proper, which treasurer and assistant treasurers shall give such bonds for the safe-keeping of the securities and moneys of the said corporation as the board may require: Provided, That any member of said board may be removed from office at any time by a concurrent resolution of the Senate and the House of Representatives."

Section 6, 16 U.S.C.A. § 831e provides: "In the appointment of officials and the selection of employees for said Corporation, and in the promotion of any such employees or officials, no political test or qualification shall be permitted or given consideration, but all such appointments and promotions shall be given and made on the basis of merit and efficiency. Any member of said board who is found by the President of the United States to be guilty of a violation of this section shall be removed from office by the President of the United States, and any appointee of said board who is found by the board to be guilty of a violation of this section shall be removed from office by said board."

Urging upon us his construction of § 4 (f), the appellant contends that Congress has thereby reserved to itself exclusive discretionary power to remove a director of the Tennessee Valley Authority, and has imposed upon the President only a mandatory duty to remove for stated causes by the provisions of § 6. He argues that in providing for removal by a concurrent resolution of both Houses of Congress, § 4(f) indicates a deliberate intention by the Congress to set up a mode of removal which expressly excludes the President, since if it had desired the President's participation in removal, it would have required a joint resolution, and that by reservation to itself of the power of removal without participation by the President it intended to provide the only method of removal, except insofar as a specific duty to remove was imposed on the President by § 6. The maxim, expressio unius, requires, he insists, a construction of § 4 that its reservation of the power of remov-

992

al excludes all other powers to remove and likewise that the conferring of a mandatory authority upon the President by § 6 impliedly excludes the grant of discretionary authority. In addition, it is urged that the plain intent of the Congress, gathered from the Act as a whole, is completely to exclude any discretionary power of the President to remove, so that the Congress may implement its own policies thereby as distinct from any executive policy, and that in addition to relying upon a technical rule of statutory construction, the appellant may properly rely upon the higher rule that a statute is to be interpreted by the meaning it has as a whole.

The indicia in the Act which demonstrate the intention of the Congress to reserve to itself exclusive power of discretionary removal, are asserted to include the provision of a fixed term of nine years for directors; § 3, 16 U.S.C.A. § 831b, making civil service laws inapplicable to officers and employees of the Authority, and permitting the board to remove appointees in its discretion and to base appointment and promotion on merit and efficiency; the creation by the Act of an independent corporation which would have the initiative of a private enterprise, thus negativing any idea of an organization within an executive department, and subject to executive control. The nine year term, it is asserted, was provided in order to prevent a political reorganization of the Authority in any one Presidential term, or a complete change of personnel within the normally expected incumbency of any single President.

The Myers case, however, notwithstanding vigorous dissent by three of the members of the court, recognized the inherent power of the President discretionarily to remove appointees confirmed by the Senate without the consent of the Senate, even though appointed for a fixed term, and even though the Act creating the office provided for removal but for stated causes. As interpreted in the Humphrey case, or as narrowed thereby, the illimitable power of discretionary removal is confined to purely executive officers. The court recognized, however, that between what was decided in the Humphrey case and what was held in the Myers case, there still remains a field of doubt, and that cases falling within it must be left for future consideration and determination as they arise.

The first question that confronts us then, in the interpretation of § 4(f), is whether it manifests an intent that the mode of removal there provided, excludes any other method of removal. If a reservation of exclusive power to remove is to be deduced therefrom, it must be by implication, for the section contains no express declaration that the method for removing members of the Board there provided, excludes any other mode of removal. It must be noted that the Act was passed subsequent to the Myers decision which sustained the discretionary power to remove, inherent in the President, and prior to the announcement of the Humphrey decision which set limits upon that power. It is not to be assumed that the Congress was in any doubt as to a power to remove residing in the President as a necessary incident to his power to appoint. Earlier cases had recognized the concept, Parsons v. United States 167 U.S. 324, 17 S.Ct. 880, 42 L.Ed. 185; Shurtleff v. United States, 189 U.S. 311, 23 S.Ct. 535, 536, 47 L.Ed. 828. Sanctioning it, the court, in the latter of the two citations, had held, "To take away this power of removal in relation to an inferior office created by statute, although that statute provided for an appointment thereto by the President and confirmation by the Senate, would require very clear and explicit language. It should not be held to be taken away by mere inference or implication." And again, "The right of removal would exist if the statute had not contained a word upon the subject. It does not exist by virtue of the grant, but it inheres in the right to appoint, unless limited by constitution or statute. It requires plain language to take it away."

Thus it may be observed that notwithstanding maxims of statutory construction which, in some circumstances, are helpful in arriving at the intent of the legislature, curtailment by the Congress of an inherent power of the President, assuming its constitutional validity, is not to be implied without clear indication of the legislative purpose. But were we to search for grounds of support for the implication now urged upon us, we should fail. The Congress was aware of the Myers decision and its rationalization, for it had aroused wide interest; the prevailing opinion had been an exhaustive review of the constitutional history of the government in relation to appointments and removal; and the three dissenting opinions had been vigorous and complete in urging an oppos-

ing view. Had it been the intention of the Congress to curtail the removal power of the President, it may be assumed that the Congress would not have been at a loss for a formula unequivocally expressing such purpose. When, in the enactment of the Budget and Accounting Act of 1921 (42 Stat. 20, 31 U.S.C.A. § 1 et seq.), it was designed to place the office of Comptroller General beyond the Presidential power of removal, it found no difficulty in expressing that intent. In providing for the removal of the Comptroller, or his assistant, if incapacitated, inefficient, guilty of neglect of duty, of malfeasance in office, or other stated grounds, it added to the provision the all-embracing clause, "and for no other cause and in no other manner except by impeachment." 31 U.S.C.A. § 43. While this case was still pending in the court below, the President sent to the Senate the nomination of James P. Pope as successor to the appellant as a member of the Board of Directors of the Authority. So one House of the Congress, at least, demonstrated lack of legislative purpose to reserve exclusive power of removal, by confirming the appointment, and this not inadvertently for the question was raised whether vacancy existed. 84 Cong. Rec., 76th Cong., 1st sess., 140-142, 236-238.

When we examine the entire T.V.A. Act, 16 U.S.C.A. § 831 et seq., for support of the construction urged upon us, the appellant has no better case. There are undoubtedly provisions, such as those requiring reports to the Congress (§ 4(j)), and for the accumulating of data useful to the formulation of subsequent legislative policy (§ 14, 16 U.S.C.A. § 831m), either for T.V.A. or other projects, which indicate the intent of the Congress to keep in close touch with the development of the activity entrusted to the Authority, yet they are no more determinative of the present problem than the many provisions in the Act which impose supervisory duties upon the President. He was authorized in the first instance to appoint the members of the Board; to designate its chairman and to fix the original terms of office; to designate the dwelling houses to be used by the members of the Board; to approve of the disposal of real property; to direct other government agencies to render assistance; to lease nitrate plant No. 2 and Waco quarry; and to transfer governmental property to the Authority to .enable it to execute its purposes. The Authority was required to file its annual report with the President and he was to approve of the percentage of gross receipts from the sales of power to be paid to the states of Alabama and Tennessee, as well as the allocation of costs of the various dams to navigation, flood control, national defense, fertilizer production and power.

Not the least of the provisions indicating the imposition of duty upon the President to supervise the performance by the Authority of the powers entrusted to it, are § 6, hereinbefore considered, and § 17, 16 U.S.C.A. § 831p, wherein the President was expressly authorized to conduct investigations in respect to dams owned by the government in the Tennessee River Basin, as to whether "there has been any undue or unfair advantage given to private persons, partnerships, or corporations, by any officials or employees of the Government, or whether in any such matters the Government has been injured or unjustly deprived of any of its rights." It is in the performance of the requirements of § 17 that the President undertook the investigation which resulted in the appellant's removal.

Finally, it must be said that if § 4(f) is to be given the construction now urged for it, doubt exists as to its constitutional validity. Springer v. Philippine Islands, 277 U.S. 189, 48 S.Ct. 480, 72 L.Ed. 845; Myers v. United States, supra. We are not required to resolve the doubt since we do not read § 4(f) as reserving to the Congress the exclusive power to remove civil officers performing purely executive or administrative functions, and as will presently appear our conclusion is that the directors of the Tennessee Valley Authority are such officers. The clearly recognizable statutory scheme was to provide an alternative method of discretionary removal in § 4(f), and to direct the President, by clear mandate, to remove for the causes recited in § 6.

The final contention of the appellant is that even though § 4(f) does not reserve to the Congress exclusive right of removal, save only as qualified by § 6, the Authority exercises quasi-legislative powers, and the President is, therefore, without power to remove its members during the terms for which they were appointed, by reason of the decision in the Humphrey case. It requires little to demonstrate that the Tennessee Valley Authority exercises predominantly an executive or administrative function. To it has been en-

trusted the carrying out of the dictates of the statute to construct dams, generate electricity, manage and develop government property. Many of these activities, prior to the setting up of the T.V.A., have rested with the several divisions of the executive branch of the government. True, it is, that in executing these administrative functions, the Board of Directors is obliged to enact by-laws, which is a legislative function, and to make decisions, which is an exercise of function judicial in character. In this respect its duties are, in no wise, different, except perhaps in degree, from the duties of any other administrative officers or agencies, or the duties of any other Board of Directors, either private or public. Whatever their character, they are but incidental to the carrying out of a great administrative project. The Board does not sit in judgment upon private controversies, or controversies between private citizens and the government, and there is no judicial review of its decisions, except as it may sue or be sued as may other corporations. It is not to be aligned with the Federal Trade Commission, the Interstate Commerce Commission, or other administrative bodies mainly exercising clearly quasi-legislative or quasi-judicial functions—it is predominantly an administrative arm of the executive department. The rule of the Humphrey case does not apply.

The judgment of dismissal is affirmed.